In re L. Frank JOHNSON, a/k/a Frank Johnson, a/k/a Leroy F. Johnson, d/b/a Johnson Farms; James Robert Johnson, a/k/a Bob Johnson, a/k/a James R. Johnson; Roy Johnson, a/k/a Frank Johnson, Jr., a/k/a Roy Frank Johnson, Debtors.

Bankruptcy Nos. 83–241–9P1, 83–242–9P1 and 83–243–9P1.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

May 9, 1989.

David Steen, Clearwater, Fla., for debtors.

Larry Foyle, Tampa, Fla., for Florida Georgia Tractor Co.

## ORDER ON MOTION FOR CRAM-DOWN PURSUANT TO § 1129 OF THE BANKRUPTCY CODE

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 reorganization case, and the matter under consideration is a Motion which seeks the confirmation of a modified plan by resorting to the cram-down provisions of the Bankruptcy Code, § 1129(b). The original Plan of Reorganization filed by these Debtors has been confirmed. Under the original Plan, it was contemplated that certain property referred to as the Bonita Farm would be sold, and the anticipated proceeds from the sale would be sufficient to pay all the allowed administrative, priority claims. Unfortunately, the sale fell through and the administrative, priority claims are yet to be paid. The Motion to modify the confirmed Plan was granted based on a stipulation of the parties.

Presently under consideration is the question whether or not the Debtors may obtain confirmation of the modified Plan which provides 10% dividends to be paid to creditors holding their allowable claims, payable in ten (10) years absent the requisite affirmative vote of the impaired claim.

The Debtors' right to obtain confirmation of their modified plan is challenged by Florida/Georgia Tractor on the ground that the Plan as modified violates the absolute priority rule set forth in § 1129(b)(2)(B)(ii) because under the modified Plan the debtors will retain ownership in their real estate holding representing their respective homestead and certain personal properties, otherwise exempt under local law, Art. X of Fla. Const., Sec. 4; Fla.Stat. 222.11, *et seq.* In support of their contention that the modified plan could be confirmed, the Debtors rely on § 1129(a)(7)(A)(ii) which permits confirmation of a plan if the Debtor is unable to obtain the requisite majority in number and amount of the affirmative vote of an impaired class, provided the members of the class receive as of the effective date of the plan no less than the amount they would receive if the Debtor is liquidated in a Chapter 7 case on that date.

The facts are not in dispute. Both counsel for Debtors and counsel for Florida/Georgia Tractor agree that the matter could be resolved as a matter of law by interpreting the interplay between § 1129(a)(7)(A)(ii), "the best interest of the creditors" test and the cram-down provision of § 1129(b)(2)(B)(ii) of the Code.

The "best interest of creditors" test provides in its simplest terms that so long as a dissenting creditor receives as much as it would receive in a Chapter 7 liquidation case, the test is met. The "fair and equitable" test ordinarily referred to as the cram-down provision, requires that unless a class above a junior class receives full satisfaction of its claim, the Code does not permit the debtor to retain any property without violating § 1129(b)(2)(B)(ii). This is generally referred to as the "absolute priority" rule.

The absolute priority rule was first discussed in detail by the Supreme Court in the case of *Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106, 60 S.Ct. 1, 84

L.Ed. 110 (1939), where Justice Douglas framed the proposition as follows:

> To hold that in a Section 77B reorganization creditors of a hopelessly insolvent debtor may be forced to share the already insufficient assets with stockholders because apart from rehabilitation under that section they would suffer a worse fate, would disregard the standards of "fair and equitable" and would result in impairment of the Act to the extent that it restored some of the conditions which the Congress sought to ameliorate by that remedial legislation.

It cannot be gainsaid that the absolute priority rule as announced by the Supreme Court in the case of *Case v. Los Angeles Lumber Products Co., supra,* is no longer viable. On the contrary, it is clear it has been codified by § 1129(b)(2)(B)(ii) and is still the controlling principle which governs confirmation of plans of reorganization filed under Chapter 11. The "fair and equitable" requirement under § 1129(b)(2)(B) includes the absolute priority rule which has been defined as follows:

> The absolute priority rule, in its simplest terms, requires that creditors of a debtor in bankruptcy reorganization receive payment of their claims in their established order of priority, and that they receive payment in full before lesser interest—such as those of equity holders—may share in the assets of the reorganized entity.

David M. Mowlen, Arnold H. Wuhrman, "The New Value Exception to the Absolute Priority Rule: Is Ahlers the Beginning of the End?", 93 *Commercial Law Journal,* p. 303 (Fall 1988).

It is without dispute that the modified plan meets the best interest test in that it is clear that upon liquidation the creditors would not receive any dividend on their allowed unsecured claim simply because there would not be any funds available to pay a dividend to unsecured creditors. This is so because the properties these Debtors seek to retain after confirmation qualify for the homestead exemption available in Florida by virtue of Article X, § 4 of the Fla. Const., thus would not be available for liquidation in a Chapter 7 case.

However, the Debtors' reliance on § 1129(a)(7)(A)(ii) is misplaced. This is so because if the absolute priority rule is violated, the plan cannot be confirmed for the following reasons:

The term "property" includes all property in which the Debtor has a cognizable, legal or equitable interest on the date of the commencement of the case [1]. The absolute priority rule clearly states that the debtor may not retain "any property" unless the creditors who are senior to the ownership interest receive full satisfaction of their allowed claims. Based on the foregoing, there is hardly any doubt that the fact that the plan submitted by the Debtors meets the liquidation test in that it proposes to pay not less than they would receive in a Chapter 7 liquidation case is not sufficient if the Debtors are unable to secure the requisite acceptances in number and amount which is the case in the present instance. This is so because the plan still must meet the "fair and equitable" test and cannot be confirmed if it violates the absolute priority rule.

One would be less than candid not to admit that even prior to the enactment of the Bankruptcy Code, the courts recognized an exception to the "absolute priority rule" first mentioned by the Supreme Court in the case of *Case v. Los Angeles Lumber Products, supra.* In this case, the Court stated that the debtor may obtain confirmation of a plan of reorganization even if it violates the absolute priority rule provided that the stockholders furnish a contribution in money or money's worth, reasonably equivalent in view of all the circumstances to the value of the participation of the stockholder.

This exception has been recognized by several courts and is supported by a strong policy consideration which as stated was to permit the infusion of new capital in a reorganized entity in order to assure that the entity is kept alive. This was also always considered to be a desirable goal

---

1. § 541.

and designed to promote the aim of congressional intent to permit financially distressed entities to achieve rehabilitation under Chapter 11. In the case of *In re Potter Material Service, Inc.*, 781 F.2d 99 (7th Cir.1986), the Court of Appeals formulated a two-part test for the purpose of determining whether or not post-confirmation contribution by a debtor would meet the standard enunciated by the Supreme Court in *Case v. Los Angeles Lumber.* The court stated that the new capital investment must (1) represent a substantial contribution; and (2) must equal or exceed the value of the interest in property retained by the Debtor.

The application of this exception usually occurs in cases involving individual farmers. See *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988); *In the Matter of Stegall*, 85 B.R. 510, 512 (Bankr.C.D.Ill.1987).

Although the Debtors involved in this Chapter 11 case are also farmers, the Debtors do not propose to furnish new capital or something equivalent in value to the value of the interest they intend to retain under the Plan. It is simply the Debtors' position that it is unnecessary to meet the absolute priority rule and comply with the same as long as the Plan proposes to give as much to the dissenting unsecured class as they would receive in a Chapter 7 liquidation case. Neither research of counsel nor independent research found any authority to support the proposition urged by the Debtors. This Court is satisfied that before a plan of reorganization can be confirmed, the Debtors either must procure the requisite acceptances of the impaired classes, or meet both the best interest of creditors test required by § 1129(a)(7)(A)(ii) and the test required by § 1129(b)(2)(B)(i) and (ii), which complies with the absolute priority rule.

This being the case, there is no question that this Plan, as modified, cannot be confirmed unless these Debtors are able to come within the exception of the absolute priority rule by infusing new capital, equivalent in value to the value of the property they are retaining, or procure the necessary acceptances of the class of unsecured

creditors within thirty (30) days from the date of entry of this Order.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the confirmation of the Plan of Reorganization submitted by these Debtors as modified be, and the same is hereby, denied. It is further

ORDERED, ADJUDGED AND DECREED that unless the Debtors are able to secure the necessary vote of the dissenting class within 30 days from the date of the entry of this Order, or propose a plan which meets the absolute priority rule, a hearing shall be scheduled with notice to all creditors to consider either dismissal or conversion of these cases pursuant to § 1112(b).

DONE AND ORDERED.